IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PEDRO ZUNIGA RUBIO,

    Plaintiff,

v.   No. 11-1269-SAC

HENRY D. HERRMANN,

    Defendant.

MEMORANDUM AND ORDER

This case arising from a farm accident comes before the Court on Defendant's motion for summary judgment. Defendant contends that Plaintiff's action is barred by the Kansas assumption-of-risk doctrine. For the reasons stated below, the Court disagrees.

**Summary Judgment Standard**

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). In applying this standard, all inferences

arising from the record must be drawn in favor of the nonmovant. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003).

**Facts**

At the time of his accident in 2009, Plaintiff was working as Defendant's employee during wheat season. Plaintiff had worked in agriculture for more than 30 years, had worked for Defendant during wheat season in 2008, and had worked for Defendant's father before that. Plaintiff was familiar with the drill planter involved in his accident because he had used it six days a week for a month in 2008, and for a week in 2009 before his injury giving rise to this lawsuit.

The drill planter included a field hitch which weighed over one thousand pounds. The field hitch has two chains to ensure that it remains in an upright position during transportation: a hydraulic chain and a safety chain. The hydraulic chain is welded to the hydraulic arm on one end, and attaches to a metal loop on the field hitch by an open, claspless, S-hook on the other end. The safety chain is secured around the tongue of the field hitch after it has been raised by the hydraulic arm, and is attached with the same kind of S-hook to a brace above the hydraulic arm. Defendant added the safety chain to keep the hitch upright and to prevent it from falling in the unlikely event the hydraulic chain became loose during transport, but never thought of using a locking hook on the safety chain to ensure it would not fall off. Gravity is the only force that ensures the S-hooks stay attached,

and both parties knew the hydraulic chain could come loose during transport, although Plaintiff had never seen it do so. Defendant sometimes wrapped a thin metal wire around the S-hook on the hydraulic chain to stop it from jiggling off during transport.

When transporting the drill planter, Plaintiff drove the tractor which pulled it, and would move when Defendant signaled him that all was ready. When both of them were present, it was Defendant who always attached and unattached the safety chain around the field hitch. Defendant did so by crawling over the seed boxes to reach the upright field hitch, instead of standing under the raised field hitch.

On the evening of September 3, 2009, Defendant helped Plaintiff prepare the drill planter for transportation to another field. From inside the tractor, Plaintiff engaged the hydraulic arm and lifted the drill planter upright. Defendant does not specifically recall checking the safety chain and the hydraulic chain to ensure that they were connected, but it was his custom to do so. Plaintiff drove the tractor to a place three miles away, and parked it overnight.

The next morning, Plaintiff and Defendant went to transport the drill planter to another field. Neither party inspected the drill planter, whose field hitch was upright. Plaintiff drove the tractor and pulled the drill planter over a road, partially paved and partially unpaved, which had "big bumps and

dips and holes," to a field six or seven miles away. Defendant followed in his truck with his flashers on.

When the parties arrived at their destination, the field hitch remained upright on the drill planter. Defendant was talking on his cell phone and waved for Plaintiff to get out of the tractor, which Plaintiff did. Defendant sat on top of the drill planter, talking, while Plaintiff paced back and forth on the ground for five or six minutes, waiting for Defendant to finish his call. Although he could have walked elsewhere, Plaintiff repeatedly passed in front of the raised field hitch while pacing. All of a sudden, without anyone having touched the safety chain, the field hitch fell on Plaintiff, causing him serious physical injuries.

**Posture of the Case**

Defendant concedes for purposes of this motion that the raised field hitch "fell for no apparent reason while plaintiff was standing directly in front of it," approximately six minutes after it had last been moved.[1] Dk. 37, p. 2. Neither party contends that the hydraulic chain or the safety chain or either of their S-hooks failed or broke, or that the field hitch itself was broken or defective in some manner, or that anyone removed either S-hook or either chain from the field hitch. The parties further agree that if the S-hooks had jostled off during transportation, the field hitch would have fallen the moment both chains became unhooked.

---

[1] For purposes of this motion, Defendant sets aside its theory that Plaintiff removed the safety chain immediately before his accident.

4

Although Plaintiff really wasn't paying attention to the equipment at the time of his injury, he assumed that both the hydraulic chain and the safety chain were hooked because the field hitch was upright during its transportation and remained upright immediately before his accident. Because he believed the field hitch was secured by chains, he "didn't worry" about any danger in walking under it, although his brother who also worked for Defendant had warned him not to stand in front of the raised hitch.[2]

Defendant moves for summary judgment based on the assumption of risk doctrine. Defendant identifies the risk as the risk "that farm machinery that is raised upright and secured by chains" may fall.

**Analysis**

The common-law defense of assumption of risk is still viable in Kansas in cases involving a master-servant relationship. *Borth v. Borth*, 221 Kan 494, 499 (1977). *See Simmons v. Porter,* 45 Kan.App.2d 177, 182 (2011), and cases cited therein. Where that doctrine applies, it is a complete defense to liability. *Tuley v. Kansas City Power & Light Co.*, 252 Kan. 205 (1992). *See Simmons*, 45 Kan. App.2d at 182-83, and cases cited therein. Assumption of risk becomes a question of law only when the evidence so clearly establishes it that no other reasonable inference may be drawn therefrom. *Kirsch v. Dondlinger & Sons Const. Co.*, 206 Kan. 701, 707 (1971).

---

[2] Defendant points to Plaintiff's brother's knowledge of danger, and asks the Court to attribute the same knowledge to the Plaintiff. To do so based on the present factual record would be merely speculative.

The essence of an employee's assumption of risk is venturousness; it implies deliberate exposure to a known danger.

> '. . . Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee (*Blackmore v. Auer*, 187 Kan. 434, 357 P.2d 765). Assumption of risk generally bars recovery by an employee who knows of the danger in a situation but nevertheless voluntarily exposes himself to that danger. In *Kleppe v. Prawl*, 181 Kan. 590, 313 P.2d 227, 63 ALR2d 175, we said:
>> ". . . (A)ssumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid, it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.' (p. 594, 313 P.2d 230.)

*Borth*, at 412-13.

Knowledge of the risk which caused one's injury may be actual or constructive.

> This court has stated that to raise an implied agreement the risk assumed must be known to the employee, or it must be of such a nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. One, knowing all the danger and peril of pursuing a given course and being under no compulsion to encounter the same, who freely and voluntarily continues therein, cannot recover damages for injuries he may suffer. . . .' (pp. 71-73, 397 P.2d pp. 324-326.)

*Borth,* 221 Kan at 414, citing *Uhlrig v. Shortt*, 194 Kan. 68 (1964). In determining whether Plaintiff voluntarily assumed the risk, as a matter of

law, the Court considers Plaintiff's age, general experience around farm equipment, specific experience with this drill planter and its field hitch and chains, the parties' custom or habit with regard to raising, lowering, and securing the field hitch and hooking and unhooking its chains, as well as all other surrounding circumstances which might show whether Plaintiff knew or appreciated the risk involved.

Defendant contends that the Plaintiff understood the danger of falling posed by the upright field hitch, yet walked repeatedly under it. But Plaintiff's actual knowledge has not been shown to have given him any conception of the peril which injured him. Instead, he testified that he thought the raised field hitch was harmless at the time of his injury because its upright position indicated that it was effectively restrained by chains designed for that very purpose. Given the facts, that belief was both logical and reasonable. Defendant has not shown that the risk that this field hitch may fall, although it was raised upright and secured by chains, was known to the Plaintiff - instead, Plaintiff understood that if the field hitch was raised upright and secured by chains, it would not fall.

Nor has Defendant shown that the danger posed by the chained upright field hitch was so obvious that an ordinarily prudent person must have known of it and must have appreciated the danger in walking under it. To prevail on this defense at this juncture in this case, Defendant has the burden of persuading the Court that the risk that the chained field hitch

would fall for no apparent reason was 'so plainly observable' that Plaintiff should have been aware of it and decided to chance it. *See Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90, 102 (1994). Given that the chained field hitch had remained upright throughout its transportation over three miles of country roads on September 3rd, during the overnight hours, throughout its transportation over six miles of bumpy roads on September 4th, and for six minutes after the drill rig had last been transported, a reasonable person would likely have assumed at the time of the accident, as Plaintiff did, that the raised field hitch was properly secured and would not fall. The evidence of record does not support the assumption of risk doctrine, as a matter of law.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Dk. 36) is denied.

Dated this 30th day of May, 2012 at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge